MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted disciplinary proceedings against Larry Preston Williams.[1] The committee had previously conducted an investigation of respondent’s alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of five specifications of misconduct was sent to respondent by certified and regular mail dated June 8, 1987.[2]
A formal investigative hearing was held on July 20, 1987. Respondent failed to *286 appear and was not represented by counsel, despite being given sufficient notice of the hearing. Based upon its investigation at the hearing, the committee, by unanimous vote, was of the opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law; that specifically, respondent was guilty of misconduct as described in specifications 1, 2. 3, 4, and 5.
On September 2, 1987, the committee filed a petition for disciplinary action against respondent in this court under the provisions of article 15, section 4(c) of the articles of incorporation.[3] Respondent did not file an answer to the petition.
The court, by order, then appointed Ms.. Jamie F. Veverica as commissioner to take evidence and file a report with this court setting forth her findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was held on May 10, 1988. Respondent again failed to appear and was not represented by counsel.[4] The committee introduced into evidence the entire record of the disciplinary proceedings, including the transcript of testimony taken at the committee hearing.[5] Thereafter, on August 4, 1988, the commissioner filed her written report with this court, wherein she set out her findings of fact and conclusions of law. The committee concurred with the eommis-sioner’s findings. The matter was submitted without oral argument to this court for a determination on the record before the commissioner.[6]
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).

Specification No. 1

Specification No. 1 alleged:
That in your capacity as Attorney at Law, you were retained to represent the interests of one Jesse Frazier in a matter involving a lawsuit adverse to North American Van Lines. That you were retained during or before 1983. Since being retained by Mr. Frazier, you have done little or nothing to advance his legal matter and have, in fact, neglected a legal matter entrusted to you in violation of DR 6-101(A)(3)[7] of the Code of Professional Responsibility of the Louisiana State Bar Association.
At the investigative hearing, Jesse Frazier testified that he hired respondent in August, 1981 to file a suit against North American Van Lines. Frazier and respondent agreed to a contingent fee arrangement of 33Vb percent of any recovery. In October, 1982, respondent contacted Frazier and told him that North American Van Lines was ready to make an out-of-court settlement. This was the last conversation Frazier had with respondent. Frazier sub *287 sequently moved to Virginia, leaving notice with respondent of his new address. Although Frazier made repeated attempts over a six-month period to contact respondent concerning the progress of his suit, he was unable to reach him. On June 5, 1986, in response to a complaint from Frazier, the committee requested that respondent provide information on the the case name, number, and court in which Frazier’s suit was filed. Although respondent stated that he would answer the complaint, no response was ever received.
The commissioner found a violation of DR 6-101(A)(3) (neglect of a legal matter entrusted to an attorney). We agree with the commissioner’s finding. This finding is based upon evidence presented by the committee. Respondent presented no evidence to the contrary.

Specification No. 2

Specification No. 2 alleged:
That in your capacity as Attorney at Law, you were consulted concerning your representation by one Jerry E. Buttner. That in connection with the consultation, certain papers and documents showing legal title to immovable property and tax receipts on said immovable property in St. Tammany Parish were placed into your possession. Despite the requests of Mr. Buttner, you have failed, neglected, and refused to return said papers to him all in violation of Disciplinary Rules DR 2-110(A)(2)[8] and DR 9-102(B)(4)[9] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Mr. Buttner, an inmate at Orleans Parish Prison, testified at the investigative hearing that he consulted respondent about filing an appeal in his criminal case. Mr. Buttner had no money to pay legal fees but did own some real estate. He provided a deed, tax receipts, and other documents relating to the real estate to respondent so respondent could determine if the property’s value was sufficient to cover his legal fees. Respondent visited Mr. Buttner on two more occasions and Mr. Buttner requested both times that his papers be returned to him. Respondent claimed the papers had been returned by certified mail, but Mr. Buttner testified that he never received them. No evidence was presented by respondent to show the papers had ever been returned to Mr. Buttner.
The commissioner found a violation of DR 2-110(A)(2) and DR 9-102(B)(4) (failure to deliver a client’s papers and property). We agree with the commissioner’s finding.

Specifications Nos. 3 & 4

Specification No. 3 alleged:
That in your capacity as Attorney at Law, you were retained to represent the interests of William and Jessie Washington in a matter involving a [sic] eviction. That you were retained on or about September of 1985 and received payments of fees in the amount of $3,500.00. That on or about February 23rd, 1986, Mr. and Mrs. Washington were evicted from their home. That between the time your [sic] were retained and paid the fees totalling $3,500.00, you have done little or nothing to represent the interests of William and Jessie Washington and neglected a legal matter entrusted to you. That you have failed, neglected, and refused to return any unearned portion of the fee received in advance and have failed, neglected, and refused to account for any earned portion of said fee. All in violation of Disciplinary Rules DR 9-102(B)(3),[10] DR *288 2-110(A)(3),[11] DR 6-101(A)(3),[12] and DR 1-102(A)(1)(4)(5)(6)[13] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification No. 4 alleged:
In connection with the representation of Jessie and William Washington in the matter involving the eviction from their home, you were entrusted with the sum of $5,000 which was to be used to negotiate payment to C.I.T. Financial Services who had bought the home at public auction. That you have failed, neglected, and refused to use said funds for the purpose for which they were intended and have failed, neglected, and refused to return said funds to William and Jessie Washington. That you have commingled and converted funds entrusted to you all in violation of Disciplinary Rules DR 9-102, and DR 1-102(A)[14] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Mrs. Jessie May Monroe Washington testified at the investigative hearing that she and her husband hired respondent to prevent the foreclosure of their home. Respondent was paid $3,050.00 in legal fees.[15] Mrs. Washington testified that respondent did “nothing” for his fees. Although respondent told Mrs. Washington he was pursuing the case, she received no copies of letters, lawsuits or any other work that respondent performed. Respondent never rendered an accounting to Mrs. Washington concerning his fees.
Mrs. Washington further testified that she gave respondent $6,000.00 which was to be paid to the mortgage holder. Although respondent informed her that he had taken care of everything, the $6,000.00 was apparently never given to the mort *289 gage holder and the Washingtons subsequently lost their home. Respondent returned $4,000.00 of the $6,000.00 intended for the mortgage holder but retained $2,000.00 of it as part of his fee. Ms. Eddie Monroe, Mrs. Washington’s daughter, testified that $5,000.00 was given to respondent, $3,000.00 of which was in the form of a cashier’s check. She testified that respondent returned only the cashier’s check, retaining the other $2,000.00. In any event, both agreed that respondent retained $2,000.00.
The commissioner found that the testimony of Mrs. Washington and Ms. Monroe was in conflict as to the exact details of the money given to respondent for the mortgage holder. However, Mrs. Washington and her daughter agreed that respondent did nothing to prevent the foreclosure and performed no other legal services. The commissioner further found that respondent refused to return fees not earned. Respondent presented no evidence to the contrary.
We concur with the commissioner’s findings. There is no indication that respondent took any legal action to prevent the foreclosure of the Washingtons’ home or that he transmitted any part of the money to the mortgage holder as instructed. There is no evidence that respondent performed sufficient work to justify retaining the fee advanced by Mrs. Washington ($3,050.00) or any part of the money intended for the mortgage holder ($2,000.00). Respondent failed to make an accounting or return the unearned fees. Therefore, we find the committee has proved violations of DR 9-102(B)(3), DR 2-110(A)(3), DR 6-101(A)(3) and DR 1-102(A)(1), (4), (5), (6).

Specification No. 5

Specification No. 5 alleged:
That in Committee File 8352, you were by letter dated June 5, 1986 requested to provide certain information involving the complaint of Jesse Frazier. That you did fail, neglect, or refuse to reply to said letter. Further correspondence was sent to you concerning this matter on July 14, 1986. That you did fail, neglect, or refuse to respond to that correspondence. That in Committee File 8488, you were initially placed on notice of the complaint of Jerry E. Buttner by letter dated April 21, 1986. That you did fail, neglect, or refuse to reply to said letter. That further correspondence was sent to you on April 21, 1986, May 29, 1986, and July 8, 1986. That you did fail, neglect, or refuse to reply to any of that correspondence. That in Committee File 8495, you were initially notified of the complaint of William and Jessie Washington by letter dated May 29, 1986. That you did fail, neglect, or refuse to reply to that complaint. That additional correspondence was sent to you regarding this matter on July 8, 1986 and you did fail, neglect, or refuse to reply to that correspondence. That on or about February 16, 1987, notice was sent to you concerning files 8352, 8488, and 8495, in which it was noted that you had not replied to correspondence in the above detailed files. That in the letter dated February 16, 1987, you were advised of and your attention was directed to Rule 8.4(g) of the Rules of Professional Conduct which became effective January 1, 1987 and were provide [sic], in the text of said letter, with the text of Rule 8.4(g). That you did fail, neglect, or refuse to reply to said correspondence. That you have failed, neglected, or refused to cooperate with the Committee on Professional Responsibility all in violation of Disciplinary Rule DR 1-102(A)(5)(6)[16] of the Code of Professional Responsibility of the Louisiana State Bar Association, and Rules 8.4(g) and 8.1(c)[17] of the Rules of Professional *290 Conduct of the Louisiana State Bar Association.
The commissioner found that respondent had been given notice of complaints filed against him by Jerry E. Buttner, Jesse Frazier, and William and Jessie Washington, but failed or refused to reply in any way. The commissioner further found that respondent was given notice of both the investigative and commissioner’s hearings but failed to attend either. As a result, the commissioner found that respondent violated DR 1-102(A)(5), (6) of the Code of Professional Responsibility as well as Rules 8.4(g) and 8.1(c) of the Rules of Professional Conduct (failure to cooperate). The record fully supports the findings of the commissioner.

Discipline

Having found respondent guilty of five specifications of misconduct, we consider that disciplinary action is warranted. Respondent has been found guilty of neglecting legal matters entrusted to him, failing to return documents, refusing to return the unearned portion of a fee and failing to cooperate in response to disciplinary proceedings against him.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violation of the Code of Professional Responsibility and the Rules of Professional Conduct. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of. each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Starr, 515 So.2d 776 (La.1987).
Although respondent has been found guilty of misconduct, we will not disbar respondent again or extend the mandatory delay of his readmission application, except for failure to comply with our orders as hereafter provided, because the violations in this case occurred at the same time as the breaches which led to respondent’s previous disbarment and form a part of the same pattern of misconduct. Nevertheless, respondent is adjudged guilty of additional violations that will stand on his record for consideration in determining whether he should be readmitted to the practice of law. We conclude that respondent is required to refund the $3,050.00 he received in unearned fees and the $2,000.00 intended for the mortgage holder he received from Mr. and Mrs. Washington. Payment should be made and proof of payment furnished to the committee on or before sixty days from the date this judgment becomes final. In addition, respondent shall furnish proof to the committee that he has made a reasonable effort to return Mr. Buttner’s documents. Upon failure to furnish proof of payment to Mr. and Mrs. Washington or failure to furnish proof that he has made a reasonable effort to return Mr. Buttner’s documents, the mandatory delay for respondent’s readmission shall be extended six months. In any event, respondent must make restitution before he will be considered for readmission.
DECREE
For the reasons assigned, it is ordered that respondent’s violations of the disciplinary rules shall stand on his record for *291 consideration in determining whether he should be readmitted to the practice of law. Respondent is ordered to pay a total of $5,050.00 to Mr. and Mrs. William Washington and make a reasonable effort to return Mr. Jerry Buttner’s documents. Respondent shall furnish proof of the aforesaid to the committee on or before sixty days from the date this judgment becomes final. Upon failure to furnish such proof within the time limit, the mandatory delay for respondent’s readmission shall be extended six months. Respondent must make restitution before he will be considered for readmission. Respondent is to bear all costs of these proceedings.

. Respondent was suspended from the practice of law for a period of three years on March 20, 1986. Louisiana State Bar Association v. Williams, 479 So.2d 329 (La.1985). On September 9, 1987, respondent was disbarred, with his previous suspension to run concurrently with his disbarment. Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987). Thereafter, on January 18, 1988, we found respondent guilty of two specifications of misconduct. We ordered that these violations should stand on his record for consideration in determining whether he should be readmitted to the practice of law. We further ordered respondent to make restitution before he could be considered for readmission. He was ordered to make restitution within sixty days of the judgment; upon failure to do so, the mandatory delay for his readmission was to be extended six months. Louisiana State Bar Association v. Williams, 518 So.2d 1005 (La.1988).
This court has jurisdiction over a disciplinary proceeding brought against a disbarred attorney. Louisiana State Bar Association v. Krasnoff, 515 So.2d 780 (La.1987).

. Two certified copies of this letter sent to respondent’s home and business address were returned as unclaimed. The letters sent by regular mail were apparently never returned.

. Respondent was personally served with this petition on October 12, 1987.

. Several days after the hearing, respondent telephoned the commissioner and asked if she would accept a letter from him setting out his position. No such letter was ever received by the commissioner. On June 13, 1988, respondent sent a Western Union Mailgram to the commissioner, requesting that she reopen the hearing in order for respondent to introduce the testimony of witnesses. The commissioner notified respondent that she would not reopen the hearing as he had been given ample notice of the original hearing.

. This evidence included the testimony of Jerry Buttner, Jesse Frazier, Jessie May Monroe Washington and Eddie Monroe, all taken on July 20, 1987 at the investigative hearing.

. Oral argument was set before this court on December 12, 1988. On that date, respondent filed a motion to continue oral argument. That motion was denied and instead respondent was given thirty days to file a brief. No brief was received during that period.

7. DR 6 — 101(A)(3) provides:
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him. The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. The alleged violations in this case occurred before the effective date, except as hereafter noted.

8.DR 2-110(A)(2) provides:
(A) In general.
(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

9. DR 9-102(B)(4) provides:
(B) A lawyer shall:
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

10. DR 9-102(B)(3) provides:
(B) A lawyer shall:
(3) Maintain complete records of all funds, securities, and other properties of a client *288 coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

11. DR 2-110(A)(3) provides:
(A) In general.
(3)A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

12. DR 6 — 101(A)(3) provides:
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.

13. DR 1-102(A)(1), (4), (5), (6) provide:
(A) A lawyer shall not:
(1)Violate a Disciplinary Rule.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

14. DR 9-102 provides in pertinent part:
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(4)Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
DR 1-102(A) provides:
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

.The specification of misconduct alleges that $3,500.00 was paid to respondent in fees. The record supports only that $3,050.00 was paid in fees.

16. DR 1-102(A)(5), (6) provides:
(A) A lawyer shall not:
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

17. Rule 8.4(g) provides:
It is professional misconduct for a lawyer to: (g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsi *290 bility in its investigation of alleged misconduct.
Rule 8.1(c) provides:
An applicant for admission to the bar, or a lawyer in connection with a bar admission or in connection with a disciplinary matter, shall not:
(c) Fail to cooperate with the Committee on Professional Responsibility in its investigation of any matter before it except for an openly expressed claim of a constitutional privilege.
The initial complaints in this case were filed in 1986. Both the committee and commissioner’s hearings were held in 1987. Since the new Rules of Professional Conduct became effective January 1, 1987, and since the old Code of Professional Responsibility became replaced at that time, respondent’s failure to cooperate with the committee since 1986 makes his conduct fall under both the Code of Professional Responsibility and the new Rules of Professional Conduct. Louisiana State Bar Association v. Hayling, 529 So.2d 1 (La.1988).