545 So.2d 1014 (1989)
LOUISIANA STATE BAR ASSOCIATION
v.
Paul R. PASQUIER.
No. 88-B-0263.
Supreme Court of Louisiana.
June 19, 1989.
*1015 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pé, Trevor G. Bryan, Elizabeth A. Alston, New Orleans, Christine Lipsey, Baton Rouge, Edmund McCollam, Houma, for applicant.
Paul R. Pasquier, Gretna, Philip R. Johnson, New Orleans, for respondent.

DISCIPLINARY PROCEEDINGS
MARCUS, Justice[*]
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted disciplinary proceedings against Paul R. Pasquier, a member of said association. The committee had previously conducted an investigation of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of two specifications of misconduct was sent to respondent by certified mail dated November 4, 1987.
A formal investigative hearing was held on December 4, 1987, as provided by article 15, section 3(b) of the articles of incorporation. Respondent appeared and was represented by counsel. Based on its investigation at the hearing, the committee by unanimous vote was of the opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law; that, specifically, respondent was guilty of misconduct as described in Specifications 1 and 2.
On January 29, 1988, the committee filed a petition for disciplinary action against respondent in this court under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. The court, by order, appointed Robert E. Rougelot as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law.[1] Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
Hearings before the commissioner were held on June 14, 1988 and November 17, 1988. Respondent and his attorney were present at both hearings. The committee introduced in evidence the entire record of the earlier investigative hearing, whereupon the committee rested its case subject to any cross-examination. Respondent called several witnesses, introduced documentary evidence, and testified on his own behalf. Thereafter, on February 3, 1989, the commissioner filed his written report with this court wherein he stated his findings of fact and conclusions of law and recommended a two-year suspension from the practice of law. The committee concurred in part and opposed in part the commissioner's findings of fact and concurred generally with the commissioner's recommendation as to discipline. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence *1016 that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).

Specification No. 1
Specification No. 1 alleged:
That in your capacity as Attorney at Law and Notary Public, you did pass an Act of Sale involving the sale of Moulin Rouge Lounge by Harry J. Rivere to Linda Hargrove, wife of/and William G. Barr on August 6, 1986. That in connection with this Act of Sale, you did receive the sum of $2,500.00 from the proceeds due to the seller which were held in escrow by you and were to be held until September 20, 1986. That you did fail, neglect, and refuse to deposit said funds into an attorney trust account; that you have commingled these escrow funds with your own funds and have converted the escrow funds to your own use; all in violation of Disciplinary Rules DR 9-102(A)(B),[[2]] and DR 1-102(A)(4)
(5)(6)[[3]] of the Code of Professional Responsibility of the Louisiana State Bar Association, and Rule 1.15[[4]] and *1017 Rule 8.4(a)(c)][5]] of the Rules of Professional Conduct of the Louisiana State Bar Association.
Evidence submitted at the investigative hearing established that respondent was retained by Mr. and Mrs. Barr in August 1986 in connection with their purchase of the Moulin Rouge Lounge from Mr. and Mrs. Harry J. Rivere. Respondent was unable to meet the requirements of the Bulk Sales Law prior to the sale. In order to protect his clients, he decided to withhold a portion of the purchase price from the sellers, pending a determination that all creditors and taxes had been paid and that the Barrs acquired the lounge free and clear. The purchase price of the lounge was $35,000. The Barrs gave the sellers a check for $32,500 and respondent a check for the balance, $2,500. Respondent cashed the Barrs' check and testified that he kept part of the money at his office and part at his home. The sellers subsequently filed a complaint against respondent with the committee and also filed a civil suit for recovery of the money owed them. In December 1987, respondent gave the $2,500 to his attorney, who placed the money in his own trust account and eventually into the registry of the court where the suit was pending.
Respondent admitted that prior to the sellers' complaint and suit, he never placed the money in a trust account. He claimed he could not place the money in a bank account because there were outstanding federal tax liens against him and he feared that any money in his account might be seized. Respondent put on extensive testimony to show that some taxes were owed on the Moulin Rouge Lounge by the sellers and that he was therefore justified in retaining the money.
The commissioner found that respondent violated DR 9-102(A), (B) and DR 1-102(A)(4), (5), (6) of the Code of Professional Responsibility as well as Rule 1.15 and Rule 8.4(a), (c) of the Rules of Professional Conduct. We agree. Respondent admitted that he failed to place the money in an identifiable bank account. When the bar association proves that an attorney has failed to deposit his client's funds in an identifiable bank account separate from the attorney's own funds, the burden is on the attorney to show there was no commingling or conversion of the client's funds. Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987). Respondent offered no evidence to show he did not commingle or convert the funds. Although respondent's motive in retaining funds for the protection of the purchasers was proper, this does not excuse him from complying with rules on managing these funds.

Specification No. 2
Specification No. 2 alleged:
That in connection with the Committee's investigation in the complaint of Harry J. Rivere, you were requested to supplement your response within fifteen (15) days by letter dated March 25, 1987. That said request asked that you furnish copies of any documentation that taxes were owed, copies of the $2,500 draft withheld for escrow and the deposit slip showing the deposit into your trust account, copies of monthly trust account statements evidencing the preservation of the escrowed funds, and accounting and copies of cancelled checks for any disbursement of the escrow funds, and a copy of the escrow agreement. That you did fail, neglect, or refuse to furnish the items requested in the supplement [sic] response. That you were again requested to furnish this supplemental response by letter dated July 16, 1987. That the letter of July 16, 1987 advised you of the contents of Rule 8.4(g).[[6]] That you did again fail, neglect, and refuse to provide *1018 the information requested and have failed to cooperate with the Committee on Professional Responsibility in investigation of alleged misconduct in violation of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association.
The record shows that an initial letter was sent to respondent on March 25, 1987, requesting evidence that the $2,500 had been placed in a trust fund. A follow-up letter was sent on July 16, 1987. Respondent did not reply to either letter. It was not until the committee hearing in December 1987 that respondent admitted he had no records. Respondent claimed at the time of the investigation, he was preoccupied with a number of personal crises, including bankruptcy and the serious illness of his wife.
The commissioner did not find a violation of Rule 8.4(g). We agree. Respondent replied to the committee's original letter outlining the complaint against him. He appeared at the committee's hearings and testified openly. While respondent did not reply to the two subsequent letters requesting documents, the documents could not be produced because they did not exist. Further, the record shows that respondent was undergoing severe personal and financial crises at the time of the investigation. Given the totality of the circumstances, we do not believe respondent's conduct amounted to a failure to cooperate under Rule 8.4(g).

Discipline
Having found respondent guilty of misconduct, we consider that disciplinary action is warranted. The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility and the Rules of Professional Conduct. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Starr, 515 So.2d 776 (La. 1987).
While respondent's failure to deposit his client's check in an identifiable bank account and his commingling and conversion of these funds are serious violations of the disciplinary rules, he had no fraudulent motive in handling the funds; in fact, his motive was to protect his clients. He was undergoing severe personal and financial difficulties at the time. The sum involved was relatively small, and the entire amount was eventually repaid into the registry of the court. Further, we note that respondent has no prior disciplinary record.
Taking into account the aggravating factors as well as the mitigating factors, we do not find that respondent should be disbarred. Rather, we find that a six-month suspension from the practice of law is an appropriate disciplinary action in this matter. See Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986).

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Paul R. Pasquier be suspended from the practice of law in Louisiana for six months from the date of finality of this judgment. Respondent is to bear all costs of these proceedings.
NOTES
[*] Pike Hall, Jr., associate justice ad hoc, sitting for Associate Justice Harry T. Lemmon.
[1] This court originally appointed Kenneth C. Hughes as commissioner. However, Mr. Hughes died prior to completing the hearing and filing a report.
[2] DR 9-102(A), (B) provides:

A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
[3] DR 1-102(A)(4), (5), (6) provides:

(A) A lawyer shall not:
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[4] Rule 1.15 provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in a bank or similar institution in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
The initial complaint in this case was filed in 1986, though the alleged misconduct continued into 1987. The committee's hearing was held in 1987 and the commissioner's hearing was held in 1988. Since the new Rules of Professional Conduct became effective January 1, 1987, and since the old Code of Professional Responsibility became replaced at that time, respondent's alleged misconduct falls under both the Code of Professional Responsibility and the new Rules of Professional Conduct. Louisiana State Bar Association v. Williams, 538 So.2d 285 (La. 1989).
[5] Rule 8.4(a), (c) provides:

It is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
[6] Rule 8.4(g) provides:

It is professional misconduct for a lawyer to:
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.