MARCUS, Justice.*
The Louisiana State Bar Association, through its Committee on Professional Re *832 sponsibility, instituted disciplinary proceedings against Rallie C. Edwins, a member of said association. The committee had previously conducted an investigation of respondent’s alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. The committee sent notice of two specifications of misconduct to respondent by certified mail on February 16, 1989.
A formal investigative hearing was held on March 13, 1989. Respondent appeared without counsel and represented himself. Based upon its investigation at the hearing, the committee, by unanimous vote, was of the opinion that respondent was guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law; that, specifically, respondent was guilty of misconduct as described in the specifications.
On June 21, 1989, the committee filed a petition for disciplinary action against respondent in this court under article 15, section 4(c) of the articles of incorporation. Respondent answered the petition denying the allegations against him. The court, by order, then appointed O’Neal Walsh as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, art. 15, § 6(b), (d).
A hearing was held before the commissioner on November 16, 1989. Respondent appeared without counsel and represented himself. With the exception of an opening statement, he offered no evidence, testimony, or witnesses on his behalf. The commissioner accepted into evidence the entire record of the disciplinary proceedings, including the transcript of the committee hearing, as offered by the bar association. Thereafter, on December 27,1989, the commissioner filed his written report with this court, wherein he set out his findings of fact and conclusions of law and recommended that this court extend respondent’s disbarment period before accepting a petition for reinstatement.[1] The committee concurred with the commissioner’s report. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.[2]
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Ass’n v. Kilgarlin, 550 So.2d 600 (La.1989).
SPECIFICATION NO. 1
The committee alleged the following misconduct on the part of respondent:
That in your capacity as Attorney at Law, you were retained to represent the interest of one Dorothy Isaac on or about May 5, 1985 in a matter involving an automobile accident. That settlement in the amount of $6,000.00 was obtained shortly thereafter. That settlement accounting and the disbursement of client’s funds were to be handled by a nonlawyer employee of yours to wit, one Rob Robertson. That out of said settlement, attorney’s fees in the amount of $2,400.00 were deducted and the amount of $1,[]583.66 was deducted to pay the medical bills of Ms. Isaac. The medical bills of Ms. Isaac in this matter were not paid and that the $1,583.66 deducted to pay the medical bills was not promptly used for payment of said bills. That said $1,583.66 was commingled and converted to either your use or the use of your nonlawyer employee, Rob Robertson, all in violation of Disciplinary Rules DR 9-102[3] and DR 1-102 [4] of the Code of *833 Professional Responsibility of the Louisiana State Bar Association_
At the investigative hearing, Dorothy Isaac testified that she first met with Rob Robertson at an office in New Iberia to discuss her claim arising from an auto accident. Ms. Isaac testified that, at a subsequent meeting, Robertson introduced respondent to her as the attorney who was handling her case. In April 1986, Ms. Isaac met with Robertson in the New Iberia office for an accounting and to disburse the settlement funds. The settlement check was made out to “Dorothy Isaac and her attorney, R.C. Edwins.” Ms. Isaac endorsed the check, and Robertson then signed respondent’s name followed by “John Day by Rob Robertson.” The check was deposited into an account with the Bank of Iberia entitled “John Day by Rob Robertson.” The evidence showed that this was Robertson’s personal account. He wrote a check out of that account in the amount of $2016.34 payable to Ms. Isaac. This represented the balance of the $6000.00 settlement after deducting $1583.66 for medical bills incurred by Ms. Isaac and $2400.00 for attorney fees. Robertson told her that he would pay the medical providers and that the fees were for respondent. However, the medical bills were not paid. One of the creditors has obtained a money judgment against Ms. Isaac who in turn obtained a judgment by third party demand against respondent and Robertson.[5]
Robertson’s testimony supported Ms. Isaac's. He stated that, as authorized by respondent, he endorsed the cheek in respondent’s name and then deposited it into the John Day account. Further, he testified that he had a power of attorney from respondent to endorse checks. Robertson said that it was customary for client checks to pass through his account and that respondent had no bank account in New Iberia. Robertson testified that he and respondent discussed how to handle the retained portion of Ms. Isaac’s settlement, but that they disagreed on what to do with it. He acknowledged that the medical providers were not paid. Although Robertson stated that he used the money to pay respondent’s personal bills and office expenses, he offered no documentary evidence to support this testimony. Respondent testified that he had previously allowed Robertson to deposit checks in the John Day account in New Iberia. But he denied any knowledge of Ms. Isaac and any involvement with her legal matters until 1987 when he was contacted by her new attorney concerning the outstanding bills. However, respondent later testified that he “might have casually been in the office” and that she might have introduced herself to him. Testimony established that the *834 office door read “R.C. Edwins, Attorney at Law.”
The commissioner concluded that respondent violated DR 9-102. We concur with the commissioner’s finding that, by allowing the settlement check to be deposited in Robertson’s John Day account, respondent permitted the commingling of his client’s funds in violation of DR 9-102. However, the evidence was insufficient to show that any of the funds were converted to the personal use of respondent. We further find that respondent violated DR 1-102(A)(1), (2), (5), (6). However, we do not find that respondent violated DR 1-102(A)(3), (4).
SPECIFICATION NO. 2
In connection with Specification No. 1 and the representation of Dorothy Isaac, the committee alleged as follows:
That in permitting your employee, Rob Robertson, to render the accounting and to handle the disbursement of funds as well as permitting your employee, Rob Robertson, to negotiate and handle the settlement with the adverse party, you have aided and abetted said Rob Robertson, a nonlawyer, in the practice of law in violation of Disciplinary Rule DR 3-101(A) [6] of the Code of Professional Responsibility of the Louisiana State Bar Association....
At the investigative hearing, Ms. Isaac testified that she thought that Robertson was an attorney and an associate of respondent’s through the time that her matter was settled. Although she met respondent and believed that he was the attorney handling her dispute, all of her contacts were with Robertson. Robertson testified that he knew respondent for over twenty-five years and that he worked as a paralegal and investigator for respondent from the early 1980’s through 1987. In the course of his employment, he was given a power of attorney so that he could sign drafts, “file motions, file the suits, etc.” for respondent. Robertson stated that he was still in the employ of respondent when Ms. Isaac’s case was settled. He testified that he handled the matter, directly negotiating Ms. Isaac’s settlement through respondent’s instructions, and that respondent authorized the $6000.00 settlement. Robertson used printed letterhead which read “R.C. Edwins and Associates, New Iberia” and signed respondent’s name to the letters. Further, Robertson acknowledged that he had handled the accounting and disbursed the settlement funds. Respondent denied any involvement with Robertson concerning the Isaac matter. He testified that he began to sever ties with Robertson in 1983. In support, respondent stated that he withdrew as counsel of record from all matters in New Iberia in September 1985 and that he mailed announcements to his individual clients. However, Robertson directly contradicted this testimony and respondent offered no supporting documentary evidence. Respondent also testified that he placed a notice in the New Iberia newspaper in October 1985 announcing the closing of his New Iberia office. However, he only offered into evidence a notice placed in a Lafayette newspaper. Other testimony established that the office door read “R.C. Edwins, Attorney at Law” and that respondent was present in the office after Ms. Isaac had retained legal services.
The commissioner concluded that respondent violated DR 3-101(A). We agree. The record contains clear and convincing evidence that respondent continued his association with Robertson and that he aided and abetted Robertson in the unauthorized practice of law. Respondent was wrong in allowing Robertson to handle the negotiation, accounting, and disbursement involved in Ms. Isaac’s settlement.
DISCIPLINE
Based on the aforesaid findings of misconduct, we consider that disciplinary action is warranted. The discipline to be imposed depends upon the seriousness of the offense involved and the facts and cir *835 cumstances of each case. The court will take aggravating and mitigating circumstances into account. Louisiana State Bar Ass’n v. Pasquier, 545 So.2d 1014 (La.1989).
Respondent is guilty of commingling Ms. Isaac’s funds in the amount of $1583.66. Despite a judgment against him, none of the money has been returned to Ms. Isaac or paid to her creditors. Respondent is also guilty of aiding and abetting a non-lawyer in the practice of law. Moreover, he has been disciplined on three earlier occasions, two of which occurred under similar circumstances.[7] The misconduct which is the focus of this investigation and the earlier like acts of misconduct occurred between 1983 and 1986. Respondent has substantial experience in the practice of law. In mitigation, respondent was suffering physical disability during this time period with frequent hospitalizations.
Taking into account the aggravating and mitigating factors, we will not extend the mandatory delay of respondent’s readmission application, except for failure to make restitution as provided below, because the violations in this case occurred at the same time as the breaches which led to respondent’s previous suspension and disbarment and form a part of the same pattern of misconduct. Nonetheless, respondent is adjudged guilty of additional violations that will stand on his record for consideration in determining whether he should be readmitted to the practice of law. Further, respondent is required to refund to Ms. Isaac the $1583.66 which was withheld for medical bills. Payment shall be made and proof of said payment furnished to the committee on or before ninety days from the date that this judgment becomes final. Upon failing to furnish proof of this payment within said time limit, the mandatory delay for his readmission shall be extended six months. In any event, restitution must be made before respondent is considered for readmission.
DECREE
For the reasons assigned, it is ordered that respondent’s violations of the disciplinary rules shall stand on his record for consideration in determining whether he should be readmitted to the practice of law. Respondent is further ordered to pay to Ms. Dorothy Isaac $1583.66 and to furnish proof of said payment to the committee on or before ninety days from the date that this judgment becomes final. Upon failing to furnish proof of this payment within said time limit, the mandatory delay for respondent’s readmission shall be extended six months. Respondent must make restitution before he is considered for readmission. Respondent is to bear all costs of these proceedings.

 Judge Melvin A. Shortess of the First Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore.

. Respondent was disbarred on March 13, 1989. Louisiana State Bar Ass'n v. Edwins, 540 So.2d 294 (La.1989).

. Respondent did not appear and was not represented at oral argument.

. DR 9-102 provides in pertinent part:
A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
*833 1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4.Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive....

. DR 1-102 provides that:
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. Broussard’s Pharmacy, Inc. v. Isaac, No. 26373, (New Iberia City Ct. June 3, 1988).

6. DR 3-101(A) provides that:
A lawyer shall not aid a non-lawyer in the unauthorized practice of law.

. Louisiana State Bar Ass’n v. Edwins, 540 So.2d 294 (La.1989) (respondent disbarred for misconduct including commingling of funds in the John Day account and aiding and abetting Robertson in the unauthorized practice of law); Louisiana State Bar Ass’n v. Edwins, 519 So.2d 93 (La.1988) (respondent suspended for two years for misconduct including commingling of funds in the John Day account); and Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La.1976) (respondent suspended for ninety days and reprimanded).