It PER CURIAM.*
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Donald R. Dobbins, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
Respondent represented Mona Ray Le-Blanc in a worker’s compensation case. Subsequently, he negotiated a settlement in the amount of $13,258.48 on behalf of his client. Respondent deposited the settlement check into his client trust account, and issued a check to Ms. LeBlanc from the trust account in the amount of $10,258.48.
Approximately one month later, Ms. Le-Blanc deposited respondent’s check into her bank account; however, it was returned for insufficient funds. As a result, several of her personal checks were dishonored. Ms. LeBlanc attempted to contact respondent to resolve the matter, but was unable to reach him for several weeks. Eventually, respondent wired funds to Ms. LeBlanc in three separate installments over a five-day period. Ms. LeBlanc later filed a complaint with the ODC as a result of the incident.[1]
I ¿DISCIPLINARY PROCEEDINGS

Formal Hearing

The ODC filed formal charges against respondent, alleging commingling and conversion of client funds.[2] Respondent filed an answer, admitting to the misconduct, but claiming his actions stemmed from his inexperience in handling client funds, rather than dishonest motive. He acknowledged his “bookkeeping left a great deal to be desired” and that he had taken measures to rectify the problem by retaining a certified public accountant to monitor his operating and trust accounts and to advise him on all accounting matters.

Formal Hearing

At the formal hearing, the ODC submitted a report from its expert witness, certified public accountant Ronald White. Mr. White testified his investigation revealed respondent used his client trust account as both an office account and a trust account. He found a portion of Ms. LeBlanc’s funds were used to pay off the overdraft in the *135 account. Thus, he determined respondent committed conversion by using a portion of the funds due to Ms. LeBlanc for his own personal purposes. However, Mr. White found there was no evidence that respondent’s actions were intended to be deceptive.
Respondent testified he never kept any money in his trust account, but would instead deposit the funds as he wrote checks. As a result, he always had his clients contact him prior to cashing their checks to make sure he had time to speak to someone at the bank to guarantee their checks would be honored. He stated he never 13had problems in the past because his clients would generally cash their checks immediately after they received them from him.

Recommendation of the Hearing Committee

The hearing committee determined respondent violated Rules 1.15(a) (failure to keep client and third-party funds separate from the lawyer’s own property) and 1.15(b) (failure to promptly deliver funds or property owed to a client or third party). It concluded respondent’s failure to establish proper accounting practices to manage his trust account represented a serious deficiency.
In imposing sanctions, the committee recognized respondent made full restitution to Ms. LeBlanc prior to the institution of the disciplinary complaint, and found there was no evidence respondent intended to convert client funds. Citing the ABA’s Standards for Imposing Laroyer Sanctions, the committee proposed that respondent be suspended from the practice of law for a period of six months, but that the suspension be fully deferred, subject to a one-year period of probation with conditions.[3]
The ODC filed an objection to the leniency of the proposed sanction.

Recommendation of the Disciplinary Board

The disciplinary board concurred in the finding of the hearing committee that respondent violated the professional rules as charged. It noted respondent violated Lduties owed to his client by failing to hold Ms. LeBlanc’s funds separate from his own property and failing to timely make her funds available to her due to insufficient funds in his account. The board found respondent’s actions of commingling and conversion were not intentional, but that he knew or should have known that his bookkeeping methods were improper. Citing jurisprudence from this court, the board determined the baseline sanction is suspension.[4] Accordingly, the board rec *136 ommended respondent be suspended from the practice of law for a period of one year, with ten months deferred, subject to a one-year period of probation subject to the conditions recommended by the hearing committee.
The ODC filed an objection to the leniency of the proposed sanction. Accordingly, the case was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
The record clearly establishes that respondent commingled and converted client funds in violation of Rule 1.15 of the Rules of Professional Conduct. Therefore, the sole issue before us is the appropriate sanction for respondent’s misconduct.
In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers |Bfrom engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Commingling and conversion are among the most serious professional breaches an attorney can commit. Aggravating factors exist in this case, including respondent’s prior disciplinary offenses,[5] pattern of misconduct stemming from the long history of mishandling his trust account, and substantial experience in the practice of law (admitted 1991). However, significant mitigating factors are present, such as respondent’s absence of a dishonest or selfish motive, his cooperative attitude toward the disciplinary proceedings, his good character and reputation, remorse, and his timely good faith effort to make restitution and rectify the consequences of his misconduct.
Following the guidelines set forth in Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), a suspension from the practice of law of at least one year is warranted under these facts. Nonetheless, we are convinced that respondent’s actions resulted more from negligence than an intentional desire on his part to convert client funds. Respondent has recognized his deficiencies and has made efforts to avoid future problems. Under these circumstances, we will suspend respondent from the practice of law for a period of one year, but defer all but six months of that suspension, subject to a one-year period of probation governed by the conditions recommended by the hearing committee. Any misconduct during the probationary ^period will be grounds for making the deferred period of suspen *137 sion executory and/or imposing additional discipline, as appropriate.[6]
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is ordered that Donald R. Dobbins be suspended from the practice of law for a period of one year. All but six months of the suspension shall be deferred, subject to a one-year period of probation governed by the conditions recommended by the hearing committee. It is further ordered that any misconduct during the probationary period will be grounds for making the deferred period of suspension executory and/or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.

. One year after the complaint was filed, respondent wrote Ms. LeBlanc a letter of apology and enclosed a check reimbursing her for the NSF and overdraft charges she incurred.

. The formal charges erroneously charged respondent with violating Rules 1.5(f)(4) and 1.5(f)(6), relative to the payment of fees in advance of services. Later, the ODC brought the error to the attention of the hearing committee, advising the proper rule violations were Rules 1.15(a) (failure to keep client and third-party funds separate from the lawyer’s own property) and 1.15(b) (failure to promptly deliver funds or property owed to a client or third party).

. The hearing committee proposed the following conditions:
a. Respondent will remain subject to the supervision of the ODC;
b. Respondent will provide the ODC with proof of separate client trust and operating accounts;
c. Respondent will provide audits of said accounts quarterly or as required by the ODC; and
d. Respondent will complete an additional ten hours of continuing legal education in law office management and ethics.

. The board cited Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), in which this court suspended an attorney for two years for gross negligence in the handling of client funds. The board also relied on In re: Reed, 99-3435 (La.1/14/00), 753 So.2d 175 (after consideration of numerous mitigating factors and one aggravating factor, a six-month suspension, fully deferred, subject to a one-year period of supervised probation with conditions was imposed by consent on an attorney with a prior disciplinary record, who mishandled $2,000 in client funds), and In re: Jones, 98-0971 (La. 11/6/98), 721 So.2d 850 (one-year suspension, with ten months deferred, subject to a two-year conditional probation imposed on an attorney without a pri- or disciplinary record, who withheld $2,500 *136 from a client's settlement to pay medical expenses and negligently permitted his client trust account balance to fall below the amount held in escrow on numerous occasions).

. On April 20, 1998, respondent was admonished for violating Rule 1.5(c) when he failed to have a contingency fee agreement in a case. See No. 99-ADB-025. On February 25, 1999, respondent was admonished again for violating Rule 1.5(c) when he failed to have contingency fee agreements in two client matters and failed to provide a client an accounting in a case he handled in the early 1990’s. See No. 99-ADB-017.

. The question of deferral of all or part of a suspension has caused some confusion in the past. Without some mechanism to make the deferral executory, deferral is meaningless. Accordingly, in cases where the disciplinary board recommends that all or part of a suspension be deferred, it should also recommend either a period of probation, or a period within which the deferred suspension may become executory, in the event of misconduct by the respondent during this period.